UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LYNWOOD CORPUZ FELIX,

    Plaintiff,

v.

KING COUNTY CORRECTIONAL
FACILITY, et.al.,

    Defendants.

Case No. C07-663-JLR-BAT

REPORT AND
RECOMMENDATION

**INTRODUCTION**

Plaintiff Lynwood Corpuz Felix, proceeding *pro se* and *in forma pauperis*, is currently confined at the King County Regional Justice Center. Dkt. 3, 6, 28. He brings this action under 42 U.S.C. § 1983, seeking injunctive relief, a declaratory judgment, and monetary damages for alleged violation of his constitutional rights when he was booked into the King County Correctional Facility ("KCCF"). Plaintiff names the following defendants: correctional officers M. Davina, Hoffard, and D. Germunson; Sergeant Kobashigawa; and Jenise, Jail Health Services. Dkt. 6.

Now before the Court is defendants' Motion for Qualified Immunity. Dkt. 33. Plaintiff filed no opposition to this motion. After careful consideration of the motion, supporting materials, governing law, and the balance of the record, the Court recommends that defendants' Motion for

REPORT AND RECOMMENDATION – 1

Qualified Immunity be GRANTED, and this case be DISMISSED with prejudice.

**BACKGROUND**

On February 2, 2007, Federal Way police officers arrested plaintiff for investigation of possession of stolen property and theft. Dkt. 34, ex. 1. When the officers brought plaintiff to KCCF, he resisted their efforts to bring him to the booking counter, stating that his arm had been injured during the arrest. Dkt. 35, at 1-2. Plaintiff was "very belligerent and uncooperative." Dkt. 38, at 1. KCCF Officers Davina and Germunson attempted to control plaintiff's behavior at the booking counter, but he continued to resist and yelled profanities at jail staff. Dkt. 37, ex. 1. Jail Health Services Nurse Jenise Temko attempted to examine plaintiff's arm, but was unable to do more than a cursory examination because of his continued resistance. *Id.*; Dkt. 39, at 2.

Sergeant Kobashigawa directed Officers Davina and Germunson to take plaintiff to a holding cell, which they did without removing his handcuffs. Dkt. 37, at 2, ex. 1. The officers placed plaintiff face-down on the floor, where Officer Hoffard controlled plaintiff's legs while Officers Davina and Germunson removed plaintiff's outer clothing. *Id.* The officers then left plaintiff in the cell with jail-issued clothing. Dkt. 35, at 2; Dkt. 37, ex. 1. Nurse Temko returned and gave plaintiff a more thorough examination. Dkt. 35, at 2; Dkt. 39, at 1-2. She noted that he reported neck pain and arm pain, but she found no swelling or pain with palpation in his arm. Dkt. 39, at 2-3.

Plaintiff alleges in his complaint that during the booking process, he was "screaming that [his] arm was hurt and that [he] needed medical treatment," and Officers Germunson and Davina responded by using more force on his injured arm. Dkt. 6, at 3. He states that he was "hog-tied" by his hands and feet, carried face-down to the holding cell, and dropped on his face. *Id.* He states that Officer Hoffard put his knee on the back of plaintiff's neck, causing "irreparable

REPORT AND RECOMMENDATION – 2

damage to [plaintiff's] nerves." *Id.* And he alleges that Nurse Temko neglected to examine his arm and neck and left him in the holding cell lying face down in his own urine. *Id.*

Plaintiff commenced this action *pro se* on May 1, 2007 and filed an amended complaint on June 22, 2007. Dkt. 1, 6. The Court ordered discovery to be completed by November 28, 2007, and dispositive motions to be filed by December 28, 2007. Dkt. 16. After the Court twice rejected plaintiff's requests for appointment of counsel, an attorney filed a notice of appearance on plaintiff's behalf on November 29, 2007. Dkt. 14, 17, 20. Shortly thereafter, defendants filed a motion to stay because plaintiff had been ruled incompetent to stand trial in his criminal cases and had been committed to Western State Hospital for 90 days. Dkt. 21. Plaintiff's counsel agreed to the stay. Dkt. 23. Plaintiff's counsel later sought to withdraw, stating that he had appeared on plaintiff's behalf primarily to assist him in discovery, and that plaintiff agreed to the withdrawal. Dkt. 25. The Court granted the motions to stay and to withdraw on March 21, 2008. Dkt. 27, 28.

On April 14, 2008, defendants gave the Court notice that plaintiff had been ruled competent in his criminal matters. Dkt. 29. The Court lifted the stay and ordered dispositive motions to be filed by May 2, 2008. Dkt. 32. Defendants timely filed their Motion for Qualified Immunity. Dkt. 33. Plaintiff filed no opposition to the motion.

## DISCUSSION

**I. Standard of Review**

Defendants seek dismissal of all of plaintiff's claims against them. Dkt. 33, at 1. Although they do not identify the authority under which they seek dismissal, as discovery has been completed in this case and defendants rely on materials outside the pleadings, the Court construes their motion as a motion for summary judgment.

Summary judgment is appropriate when, viewing the evidence in the light most favorable

REPORT AND RECOMMENDATION – 3

1 to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the
2 moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is
3 a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc*., 477
4 U.S. 242, 248 (1986). Genuine issues of material fact exist when the evidence would enable "a
5 reasonable jury . . . [to] return a verdict for the nonmoving party." *Id*. (internal citations omitted).

6       The moving party bears the initial burden of showing the absence of a genuine issue of
7 material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). If the moving party meets this
8 burden, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but
9 must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence
10 sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e);
11 *Anderson*, 477 U.S. at 248.

12       The Court's pretrial scheduling order and amended pretrial scheduling order advised
13 plaintiff of what he must do to oppose a motion for summary judgment:

> When a party you are suing makes a motion for summary judgment that is
> properly supported by declarations (or other sworn testimony), you cannot simply
> rely on what your complaint says. Instead, you must set out specific facts in
> declarations, depositions, answers to interrogatories, or authenticated documents,
> as provided in Rule 56(e), that contradict the facts shown in the defendant's
> declarations and documents and show that there is a genuine issue of material fact
> for trial. If you do not submit your own evidence in opposition, summary
> judgment, if appropriate, may be entered against you. If summary judgment is
> granted, your case will be dismissed and there will be no trial.

19 Dkt. 13, 16; *see also Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998). Furthermore, the
20 orders advised plaintiff that, under Local Rule CR 7(b)(2), a party's failure to file necessary
21 documents in opposition to a motion for summary judgment may be deemed by the court to be
22 an admission that the opposition is without merit. Dkt. 13, 16.

23       Plaintiff did not file a brief in opposition to defendants' motion as Local Rule CR 7(b)(2)

REPORT AND RECOMMENDATION – 4

requires.  Accordingly, the Court may deem plaintiff to have admitted that the motion has merit.  Even if the Court does not make this assumption, plaintiff has not submitted to the Court any facts demonstrating a genuine issue for trial.  *See Anderson*, 477 U.S. at 248.  Thus, summary judgment is appropriate if defendants have shown that they are entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

**II.     Qualified Immunity**

Defendants assert that they are entitled to qualified immunity because the correctional officers used only minimal and appropriate force and Nurse Temko provided appropriate medical care.  Dkt. 33, at 6-7.

Qualified immunity shields government officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Courts apply a three-part inquiry to determine if qualified immunity applies.  First, the Court must consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the facts show that no constitutional violation could be established, no further inquiry is necessary.  *Id.* at 201.  If the facts could establish a violation, the Court must next ask whether the right was clearly established.  *Id.*  Finally, the Court must decide whether a reasonable officer in these circumstances would have thought his or her conduct violated the alleged right.  *Id.* at 205.

Plaintiff alleges that officers Davina, Hoffard, and Germunson, at Sergeant Kobashigawa's direction, used excessive force when booking him into the jail. Dkt. 6, at 3.  The Fourteenth Amendment's Due Process clause protects pretrial detainees from uses of excessive force that

REPORT AND RECOMMENDATION – 5

amount to punishment. *Gibson v. County of Washoe Nevada*, 290 F.3d 1175, 1197 (9th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). The Fourth Amendment sets the applicable constitutional limitations for purposes of analyzing excessive-force claims by pretrial detainees. *Id.* (citing *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996)). Excessive-force claims by pretrial detainees turn on whether the officers' use of force was objectively reasonable, given the circumstances. *Graham*, 490 U.S. at 397. Corrections officials must be free to take action to ensure the safety of themselves and other inmates, and to ensure security and order within the prison. *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979).

      The defendants' uncontested evidence shows that the officers' use of force was reasonable under the circumstances. Plaintiff was belligerent and resisting the officers during the booking process. Dkt. 37, ex. 1. The officers used "minimal force" to escort him to the holding cell and to restrain his feet when they removed the handcuffs to undress him. Dkt. 37, at 2. A nurse who examined plaintiff shortly after the officers left him in the cell did not report and injuries caused by the correctional officers. Dkt. 39, at 2. The officers' actions were necessary to maintain security and order within the jail's booking area. Because the officers did not violate plaintiff's right to be free from excessive force, no further qualified immunity analysis is necessary, and the officers are entitled to judgment as a matter of law.

      Plaintiff also alleges that Nurse Temko neglected to examine his arm and neck and left him lying in his own urine. Dkt. 6, at 3. The Due Process clause protects the right of pretrial detainees to receive medical care when they have been injured in the course of an arrest. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). The Eighth Amendment provides the minimum standard of care for pretrial detainees. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). Jail officials violate the Eighth Amendment if they are deliberately indifferent to a detainee's serious

REPORT AND RECOMMENDATION – 6

medical needs. *Id.* The deliberate indifference must be both purposeful and substantial in nature. *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 525 (9th Cir. 1999).

The defendants' uncontested evidence shows that Nurse Temko was not indifferent to plaintiff's medical needs. On the contrary, she attempted to examine plaintiff upon his arrival at the jail, but could not perform a thorough examination because he was uncooperative. Dkt. 37, at 2. After the officers placed plaintiff in the holding cell, Nurse Temko examined him. Dkt. 35, at 2; Dkt. 39, at 1-2. She noted that plaintiff reported pain in his neck and arm from his arrest, but she found no swelling or pain with palpation. Dkt. 39, at 1-2. Nurse Temko provided appropriate medical care in light of plaintiff's claimed injuries and the result of her examination. Because she did not violate his right to receive medical care, no further qualified immunity analysis is necessary, and she is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, the Court recommends that defendants' Motion for Qualified Immunity (Dkt. 33) be GRANTED and that plaintiff's amended complaint (Dkt. 6) be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 4th day of September, 2008.

BRIAN A. TSUCHIDA
United States Magistrate Judge